**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Civil Action No. 2:18-cv-00505-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

**CISCO SYSTEMS, INC.'S MOTION TO TRANSFER VENUE TO THE
SOUTHERN DISTRICT OF NEW YORK PURSUANT TO A
FORUM SELECTION CLAUSE IN A PRIOR LICENSE AGREEMENT**

## TABLE OF CONTENTS

Pages

I.  INTRODUCTION ............................................................................................1

II.  RELEVANT FACTS ......................................................................................2

    A.  Procedural History ...........................................................................2

    B.  The Bluetooth Patent/Copyright License Agreement (PCLA) ...............2

III.  LEGAL STANDARD......................................................................................4

IV.  ARGUMENT ..................................................................................................6

    A.  The Court Must Transfer This Case Under *Atlantic Marine*. .................6

    B.  The Court Should Transfer This Case Pursuant To The Forum Selection Clause...........................................................................................7

        1.  The PCLA's Forum Selection Clause Is Mandatory. ..................7

        2.  The Forum Selection Clause Applies To This Case. ...................7

            a.  The Present Case Falls Within The Scope Of The Forum Selection Clause.................................................................8

            b.  Cisco's License Defense Is Far From Frivolous.............................8

            c.  The Forum Selection Clause Is Enforceable................................11

    C.  This Case Could Have Been Brought In The Southern District of New York. ...............................................................................................12

    D.  The § 1404(a) Public Interest Factors Favor Transfer. ..........................13

        1.  The Administrative Difficulties Flowing From Court Congestion Are Neutral With Respect To Transfer.......................................13

        2.  The Southern District Of New York's Local Interest In This Case Favors Transfer. ................................................................14

        3.  The Southern District Of New York's Familiarity With New York State Law Favors Transfer. ...................................................15

        4.  Avoidance Of Unnecessary Conflicts of Law Issues Or The Application Of Foreign Law Is Neutral. ....................................15

CONCLUSION...................................................................................................15

## **TABLE OF AUTHORITIES**

**Pages**

### **Cases**

*Aguas Lenders Lenders Recovery Grp. LLC v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009)................................................................................ 12

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013)............................................................................ 4, 5, 13, 14

*Azure Networks, LLC et al v. CSR plc, et al*,
  No. 6:11-cv-139-LED-JDL, 2012 WL 12841483 (E.D. Tex. Jun. 25, 2012).................... 6

*Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*,
  No. CIV. 3:09CV212 (AWT), 2010 WL 174078 (D. Conn. Jan. 14, 2010) ................... 12

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
  240 F. App'x 612 (5th Cir. 2007) ...................................................................... 5

*Broadcom Corp. v. U.S. Dist. Court for E. Dist. of Tex. et al*,
  571 U.S. 1090 (2013).................................................................................... 6

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*,
  651 F.3d 1355 (Fed. Cir. 2011)................................................................ 7, 8, 11

*Haynsworth v. The Corp.*,
  121 F.3d 956 (5th Cir.1997) ...................................................................... 5, 7, 11, 12

*In re Atlantic Marine Constr. Co.*,
  701 F.3d 736 (5th Cir. 2012) ......................................................................... 6

*In re Broadcom Corp.*,
  526 Fed. App'x. 960 (Fed. Cir. 2013).............................................................. 6

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)...................................................................... 4

*Interactive Music Tech., LLC v. Roland Corp. U.S.*,
  No. 6:07-cv- 282, 2008 WL 245142 (E.D. Tex. Jan. 29, 2008) ............................... 5, 7

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)................................................................................... 5, 12

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).................................................................................... 4

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Tessera Adv. Techs., Inc. v. Samsung Elecs. Co., Ltd. et al*,
   No. 2:17-cv-00671-JRG, 2018 WL 8014281 (E.D. Tex. Sep. 5, 2018) .................. 5, 7, 11

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) ........................................................................................ 8

*Uniloc USA, Inc. et al v. Cisco Sys., Inc.*,
   No. 6:15-cv-1175-JRG, 2017 WL 959856 (E.D. Tex. Mar. 13, 2017) ..................... passim

*Weber v. PACT XPP Techs., AG*,
   811 F.3d 758 (5th Cir. 2016) ............................................................................... 7, 11, 12

*XY, LLC v. Trans Ova Genetics, LC*,
   No. W-16-CA-00447-RP, 2017 WL5505340 (W.D. Tex. Apr. 5, 2017) ................... 7, 13

*Zix Corp. v. Echoworx Corp.*,
   No. 2:15-cv-1272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016) .................... 5, 8, 13

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................ 13

Defendant Cisco Systems, Inc. ("Cisco") respectfully requests that the Court transfer this action to the Southern District of New York.

## I.      INTRODUCTION

This is not the first time that Uniloc sued Cisco for patent infringement in this Court where the patents were subject to the terms of a preexisting license.  More than three years ago, Uniloc sued Cisco in this Court in disregard of a license agreement with an exclusive forum selection clause requiring that Uniloc bring suit on those patents in the Western District of Washington. This Court transferred that case to the Western District of Washington.

Unsatisfied with the result of the previous litigation, Uniloc acquired additional patents to assert against Cisco.  Shortly after acquiring those patents, it filed this suit against Cisco asserting that certain Cisco products infringe U.S. Patent Nos. 6,285,892 (the "'892 patent") and 6,664,891 (the "'891 patent") (collectively, the "Patents-in-Suit") based on their compliance with Bluetooth Special Interest Group ("SIG") specifications.  Once again, Uniloc's suit against Cisco disregards a license agreement with an exclusive forum selection clause.

Long before Uniloc's acquisition of the Patents-in-Suit, the original owner of the Patents-in-Suit, Koninklijke Philips Electronics N.V. ("Koninklijke Philips")[1] granted to Cisco a "nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicenseable, worldwide license" to any claims of a patent that are necessary to implement the Bluetooth Specifications.  *See* Ex. 1[2] (The Bluetooth Patent/Copyright License Agreement ("PCLA")).  Any disputes "arising in any way out of" that license agreement must be heard exclusively in the state

---

[1] Koninklijke Philips is the original assignee of the '891 patent and parent of Philips North America LLC ("Philips NA") (f/k/a Philips Electronics North America Corporation), the original assignee of the '892 patent.  Koninklijke Philips's license grant extended not only to patents that it directly owned, but also to any patents owned by its affiliates.  *See* Ex. 1, § 5(b).

[2] All exhibits cited that are not preceded by a docket index number come from the Declaration of Elizabeth Weyl, filed concurrently with this motion.

or federal courts of New York.  *Id.* at § 8(e).  Accordingly, Cisco respectfully requests that the Court transfer this case to the Southern District of New York.

## II.     RELEVANT FACTS

### A.     Procedural History

On November 17, 2018, Uniloc filed this action asserting that Cisco infringes the Patents-in-Suit.  (D.I. 1, ¶ 2.)  On January 18, 2019, Cisco filed a motion to dismiss Uniloc's pre-suit indirect infringement and willfulness allegations. (D.I. 17.) Uniloc responded by amending its complaint to remove those allegations. (D.I. 19.) On February 19, 2019, Cisco answered Uniloc's complaint and asserted *inter alia* a license defense based on the Bluetooth PCLA.  (D.I. 20, ¶¶ 73-76.)  On March 4, 2019, Uniloc served its infringement contentions pursuant to P.R. 3-1.

### B.     The Bluetooth Patent/Copyright License Agreement (PCLA)

Bluetooth SIG is the standards setting organization that oversees the development of Bluetooth technology standards and the licensing of Bluetooth technologies and trademarks to its member companies.  Ex. 2, Art. III. To qualify for membership in the Bluetooth SIG organization, companies must agree to the terms of the Bluetooth PCLA¸ in which they grant a patent license to other Bluetooth SIG Members.  That Bluetooth PCLA contains a forum selection provision that requires that "all disputes arising in any way out of [the PCLA] shall be heard exclusively in, and all parties irrevocably consent to jurisdiction and venue in, the state and Federal courts of New York."  Ex. 1, § 8(e).  Accordingly, any dispute regarding the PCLA—including Uniloc's infringement claims and Cisco's corresponding license defenses under the PCLA—must be heard in New York.

Koninklijke Philips, Uniloc's predecessor-in-interest for the '891 patent is an Associate Member of Bluetooth SIG—and has been since before 2003—and agreed to the terms of the

PCLA.  Philips Decl., ¶¶ 8-11,[3] Ex. 3  Koninklijke Philips' agreement to the PCLA also bound its Affiliates, including Philips NA, Uniloc's predecessor-in-interest for the '892 patent.[4]  In the PCLA, "each Associate and Adopter Member and their Affiliates ***hereby grant to each*** Promoter Member and Associate, and ***Adopter Member and all of their respective Affiliates [] a nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicenseable, worldwide license*** under its Necessary Claims solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions[5] . . . ."  Ex. 1, § 5(b).  Cisco is an Adopter Member of Bluetooth SIG, and has been since 2006, and is therefore a specified licensee under the PCLA.  Ex. 3.   "Necessary Claims" is defined in the PCLA as:

> claims of a patent or patent application that (a) are owned or controlled by a party or its Affiliates (Licensor) now or at any future time while this License Agreement remains in effect; and (b) ***are necessarily infringed by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope***, wherein a claim is necessarily infringed only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the Scope. Notwithstanding the foregoing sentence, Necessary Claims do not include any claims (i) other than those set forth above even if contained in the same patent as Necessary Claims; (ii) that read solely on any implementations of any portion of the Bluetooth Specification or Foundation Specification that are not within the bounds of the Scope; or (iii)

---

[3] Citations to the "Philips Decl." refer to the accompanying declaration of Michael E. Marion.
[4] Philips NA is an "Affiliate" under the PCLA because it is a wholly owned subsidiary of Koninklijke Philips.  Philips Decl., ¶ 2.  The PCLA defines "Affiliate" by incorporating the definition of "Affiliate" from the Bluetooth SIG Bylaws ("Bylaws").  Ex. 1, § 1(b).  The Bylaws define "Affiliate" to mean "any entity that is, directly or indirectly, controlled by, under common control of, or that controls the subject party."  Ex. 4, § 4.9.
[5] All emphasis added unless noted otherwise.  "'Compliant Portion' means only those specific portions of products (hardware, software or combinations thereof) that: (i) implement and are compliant with the actual Bluetooth Specification and/or Foundation Specification, whichever the case may be, (ii) are qualified pursuant to the Bluetooth Qualification Process, (iii) are within the bounds of the Scope and (iv) meet the requirements set forth in the Compliance Requirements." *See* Ex. 1, § 1(j).

that, if licensed, would require a payment of royalties by the Licensor to unaffiliated third parties.

Ex. 1, § 1(o).  Scope is defined, in relevant part, as:

> **the protocols and data formats needed for Bluetooth interoperability**, and the electrical signaling characteristics solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within such Bluetooth Specification and/or Foundation Specification. . . .

*Id.*, § 1(p).

## III.   LEGAL STANDARD

"Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law).  According to section 1404(a), "a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented."  Transfer pursuant to section 1404(a) is the proper vehicle to enforce a forum selection clause.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 52, 59-60 (2013).

In *Atlantic Marine*, the Supreme Court concluded that the "proper application of § 1404 requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Id.* at 59-60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).  In patent cases, a forum selection clause often arises when a defendant has a defense based on a license agreement.  *E.g., Uniloc USA, Inc. et al v. Cisco Sys., Inc.* No. 6:15-cv-1175-JRG, 2017 WL 959856, *2 (E.D. Tex. Mar. 13, 2017).

A valid forum selection clause alters the § 1404(a) analysis in three important ways.  *Atl. Marine*, 571 U.S. at 63-64.  "First, the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer

4

to the forum for which the parties bargained is unwarranted." *Id*. at 63.  "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests." *Id*. at 64.  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id*.

In disputes implicating a forum selection clause, only the § 1404(a) public interest factors—not the private interest factors—are at issue. *Id*. These public factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Tessera Adv. Techs., Inc. v. Samsung Elecs. Co., Ltd. et al.*, No. 2:17-cv-00671-JRG, 2018 WL 8014281, at *3 (E.D. Tex. Sep. 5, 2018); *see also Atl. Marine*, 571 U.S. at 62 n.6.

Federal law governs the interpretation and enforcement of forum selection clauses. *See, e.g.*, *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir.1997); *Braspetro Oil Servs. Co. v. Modec (USA), Inc*., 240 F. App'x 612, 615 (5th Cir. 2007).  Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972) (internal quotation marks omitted).  This Court has consistently enforced forum selection clauses in license agreements by transferring patent infringement cases.  *See, e.g., Tessera*, 2018 WL 8014281 at *4-5; *Uniloc USA*, 2017 WL 959856, *1-2; *Zix Corp. v. Echoworx Corp*., No. 2:15-cv-1272-JRG, 2016 WL 7042221, at *3-4 (E.D. Tex. June 9, 2016); *Interactive Music Tech., LLC v. Roland Corp. U.S*., No. 6:07-cv- 282, 2008 WL 245142, at *6-7 (E.D. Tex. Jan. 29, 2008).

## IV.    ARGUMENT

### A.    The Court Must Transfer This Case Under *Atlantic Marine*.

Before the Supreme Court's decision in *Atlantic Marine*, one court in this district had the opportunity to evaluate the forum selection clause found in the Bluetooth PCLA.  *See Azure Networks, LLC et al v. CSR plc, et al*, No. 6:11-cv-139-LED-JDL, 2012 WL 12841483 (E.D. Tex. Jun. 25, 2012).  The *Azure* court denied the defendants' motion to transfer to New York on grounds that "[d]efendants have failed to show that the Southern District of New York . . . [is a] clearly more convenient forum[]…."  *Id*. at *1.  The Federal Circuit denied a petition for writ of mandamus, reasoning that the district court did not commit a clear abuse of discretion because the Fifth Circuit *Atlantic Marine* case allowed district courts to "place the burden on a movant to demonstrate that the contractually-chosen forum is clearly more convenient than plaintiff's chosen forum."  *In re Broadcom Corp.*, 526 Fed. App'x. 960, 964 (Fed. Cir. 2013) (non-precedential) (citing *In re Atlantic Marine Constr. Co.*, 701 F.3d 736, 741-42 (5th Cir. 2012)).

Shortly thereafter, the Supreme Court reversed and remanded the Fifth Circuit's decision in *Atlantic Marine* (571 U.S. 49), and as a result the Supreme Court vacated the judgement of the Federal Circuit in *In re Broadcom* for further consideration in light of their decision in *Atlantic Marine*.  *Broadcom Corp. v. U.S. Dist. Court for E. Dist. of Tex. et al*, 571 U.S. 1090 (2013).  For various reasons the issue of transfer was never reconsidered but the *Azure* plaintiffs stipulated with the defendants in the district court action that they would not accuse defendants, their affiliates, or their direct or indirect customers of infringement "based in whole or in part on Defendants' products implementing, practicing, or supporting any Bluetooth standard[.]"  *Azure Networks*, No. 6:11-cv-139-LED-JDL, D.I. 323, ¶ 3 (filed Feb. 9, 2015), attached as Ex. 5.  Consistent with *Atlantic Marine*, the Court should transfer this case.

**B.      The Court Should Transfer This Case Pursuant To The Forum Selection Clause.**

When determining whether to transfer pursuant to a forum-selection clause, a court must initially determine whether the forum-selection clause is mandatory or permissive.  *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL5505340, at *2 (W.D. Tex. Apr. 5, 2017) (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770-71 (5th Cir. 2016)).  After making that determination, a court must then decide whether the forum-selection clause applies to the present case.  *Id.* (citing *Weber*, 811 F.3d at 770-71).  Federal law determines the enforceability of a forum selection clause, and federal law views forum selection clauses as presumptively valid and enforceable unless shown to be unreasonable under the circumstances.  *Id.* (citing *Haynsworth*, 121 F.3d at 962-63).

**1.      The PCLA's Forum Selection Clause Is Mandatory.**

The PCLA's forum selection clause is mandatory because it contains clear, unequivocal and mandatory language requiring a specific forum:  "all disputes . . . ***shall*** be heard ***exclusively*** in, and all parties ***irrevocably consent to*** jurisdiction and venue in, the state and Federal courts of New York."  Ex. 1, § 8(d); *see, e.g., Interactive Music Tech.*, 2008 WL 245142, at *3-5 (finding the "venue shall" clause mandatory without further language indicating exclusivity).

**2.      The Forum Selection Clause Applies To This Case.**

When determining "the applicability of [a][] forum selection clause, the Federal Circuit has instructed that the nexus between the present case and the alleged license defense must be "'non-frivolous.'"  *Tessera*, 2018 WL 8014281 at *2 (citing to *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011)).

### a.   The Present Case Falls Within The Scope Of The Forum Selection Clause.

The forum selection clause in the PCLA applies to this litigation because it covers "all disputes arising in any way out of this [PCLA]." Ex. 1, § 8(e).  The Federal Circuit has held that patent infringement disputes "arise from" license agreements for the purposes of triggering a forum selection clause so long as the clause "is not limited to license related issues such as the amount of royalty due, term of agreement, and cross-licensing."  *Texas Instruments Inc. v. Tessera, Inc*., 231 F.3d 1325, 1331 (Fed. Cir. 2000); *see also Gen. Protecht Grp*., 651 F.3d at 1359.  There is no such limitation in the forum selection clause of the PCLA.  In fact, this Court has consistently enforced forum selection clauses in patent litigations when such non-limiting language is used in the underlying license agreements. *See, e.g., Uniloc USA*, 2017 WL 959856, at *1-2 (finding subsequent patent litigation qualifies as "arising as to the performance or breach of the agreement"); *Tessera*, 2018 WL 8014281 at *2-5 (subsequent patent litigation qualifies as "[a]ny disputes or claims alleging a breach…or relating to the interpretation of this Agreement").

### b.   Cisco's License Defense Is Far From Frivolous.

The mere assertion of a license defense in a subsequent patent litigation does not always trigger a forum selection clause.  Indeed, one may not, for example, assert a wholly inapplicable license defense as a pretext for applying its forum selection clause.  Thus, for a forum selection clause in a patent license agreement to control a subsequent patent dispute, the alleged license defense must be "non-frivolous."  *Gen. Protecht Grp*., 651 F.3d at 1359 (concluding that the forum selection clause applied because the movant presented "a non-frivolous dispute regarding the scope of a patent license . . . [where] [t]he outcome of that dispute will determine whether the patentee can sustain its suit for infringement."); *Zix*, 2016 WL 7042221, at *3-5 (granting transfer and finding the license defense non-frivolous when "nearer the one-quarter marker" between

"frivolous" and "a conclusive showing of success on the merits"); *Uniloc USA*, 2017 WL 959856, *1-2 (same).

Here, Cisco's license defense is far from frivolous.  Philips—the original  owner of the Patents-in-Suit—explicitly granted to "Adopter Member[s]" of Bluetooth SIG—which includes Cisco[6]—a "non-exclusive, royalty-free, perpetual, irrevocable, nonsublicenseable, worldwide license under its Necessary Claims solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions." *See* Ex. 1, § 5(b).  The asserted claims of the Patents-in-Suit are "Necessary Claims"[7] because: (a) Philips and its Affiliate owned the Patents-in-Suit while the PCLA was in effect; and (b) Uniloc alleges that the asserted claims of the Patents-in-Suit are necessarily infringed by implementing portions of the SIG Bluetooth Specifications that relate to protocol and data formats needed for Bluetooth interoperability.

First, the ownership aspect is satisfied because Koninklijke Philips was a member of Bluetooth SIG while it and its affiliate, Philips NA, owned the Patents-in-Suit.  *See* Philips Decl., ¶ 8 and Exs. 6-9. Koninklijke Philips is a Bluetooth SIG member to this day.  Philips Decl., ¶ 8. Thus, Philips's license grant covers the Patents-in-Suit.

Second, Uniloc's recently served infringement contentions in this case satisfy the technical aspects of "Necessary Claims."  In its contentions for the '892 patent, Uniloc cites a Bluetooth Specification to satisfy each element of each of the asserted claims.  Ex. 10, Ex. B.  In particular, Uniloc's '892 patent infringement contentions are based on Cisco's alleged compliance with

---

[6] Cisco became an "Adopter Member" of Bluetooth SIG on February 5, 2006, when Philips still owned the Patents-in-Suit. Ex. 3.
[7] As shown in Section II.B *supra*, "Necessary Claims" "(a) are owned or controlled by a party or its Affiliates (Licensor) now or at any future time while this License Agreement remains in effect; and (b) are necessarily infringed by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope."

portions of the Bluetooth Low Energy ("BLE") protocol versions 4.0 and 5.0 that are defined in, and required by, SIG's Specification of the Bluetooth System for interoperability ("the Specification").  Ex. 10, Ex. B at 7-33.  Throughout its infringement contention claim charts, Uniloc points only to BLE standard features, such as BLE piconet formation, BLE compliant protocol data units, and BLE compliant advertisement requests to show Cisco's alleged infringement of every asserted claim limitation excluding the preamble.[8]

Similarly, Uniloc's '891 patent infringement contentions are based on Cisco's alleged compliance with protocols and data formats that are defined in, and required by, SIG's Bluetooth Specifications for interoperability.  Ex. 10, Ex. A.  Indeed, although Uniloc cites Cisco and Texas Instruments documentation, the features identified by Uniloc as providing the allegedly infringing functionality come from the Specification of the Bluetooth System.[9]

---

[8] *See, e.g.,* Ex. 10, Ex. B at 10-11 (relying on pages 126, 127, and 181 of version 4.0 of the Specification (or alternatively pages 169-172, 228-229, and 234-238 of version 5.0 of the Specification) for element 1a); *id.* at 12 (relying on page 221 of version 4.0 of the Specification (or alternatively pages 221-222 of version 5.0 of the Specification) for element 1b); *id.* at 13-18 (relying on pages 150, 177, 153-154, 2201-2202, and 2303-2305 of version 4.0 of the Specification (or alternatively pages 197-199, 221-222, 224, and 2566-2575 of version 5.0 of the Specification) for element 1c); *id.* at 19-20 (relying on pages 141, 177, and 187 of version 4.0 of the Specification (or alternatively pages 184, 199, 209, and 224 of version 5.0 of the Specification) for element 1d); *id.* at 21-26 (relying on pages 150, 177, 153-154, 2201-2202, and 2303-2305 of version 4.0 of the Specification (or alternatively pages 197-199, 221-222, 224, and 2566-2575 of version 5.0 of the Specification) for element 1e); *id.* at 27-30 (relying on pages 186-187 of version 4.0 of the Specification (or alternatively page 234 of version 5.0 of the Specification) for elements 1f and 1g); *id.* at 31-33 (relying on pages 186-187 and 2221 of version 4.0 of the Specification (or alternatively pages 234 and 2608 of version 5.0 of the Specification) for element 1h).

[9] *Compare* Ex. 10, Ex. A at 4 (alleging limitation is satisfied because the accused devices send Bluetooth "advertisements (inquiry messages)") *with* Ex. 11 Part 1, pdf pp. 178 and Part 2, pdf pp. 842-43 (showing Bluetooth "advertisements"); *compare* Ex. 10, Ex. A at 5 (pointing to "Bluetooth advertisements" with "preamble, Access address, PDU header, and Broadcast address" fields) *with* Ex. 11 Part 1, pdf pp. 153-54 (showing Bluetooth advertisements with same preamble, access address, PDU header, and Broadcast address fields); *compare* Ex. 10, Ex. A at 5 (pointing to "UUID, Major, Minor" fields) *with* Ex. 11 Part 2 pdf pp. 217-18, 221, 244-45, and 248 (describing same UUID, Major, and Minor fields).

Even if Uniloc genuinely disputes that Cisco is licensed, a New York court must resolve such a disagreement and determine the actual scope of the license agreement pursuant to New York law.  At this juncture, the Court must merely determine whether Cisco's defense is non-frivolous.  *See, e.g., Uniloc USA*, 2017 WL 959856, at *1, 3-4 (finding Cisco's license defense non-frivolous stating plaintiff's arguments regarding the scope of the license "demonstrate nothing more or less than the fact that there is a live dispute between the parties regarding Cisco's license defense.  The resolution of this dispute, however, should not be made by this Court."); *Rovi Guides*, 2016 WL 6217201, at *4 (rejecting plaintiff's argument that the accused products were not covered by the agreement because "[s]uch arguments . . . demand resolution of [defendant's] liability and defenses, begging the question of whether Rovi's patent infringement suits are at least connected to the [agreement]."); *see also Tessera*, 2018 WL 8014281 at *4 (finding defendant sufficiently showed a forum selection clause attached because the Court must unavoidably interpret the agreement with the forum selection clause in resolving the claims).  Cisco has provided more than a "bare allegation" of a license defense; it has provided colorable and factually specific arguments as to why its Bluetooth compliant products are licensed under the PCLA based on Uniloc's infringement allegations in this case.  *Gen. Protecht*, 651 F.3d at 1359.  Cisco's non-frivolous license defense triggers the forum selection clause of the PCLA.  *Uniloc USA*, 2017 WL 959856 at *4; *Tessera*, 2018 WL 8014281 at *4.

### c.    The Forum Selection Clause Is Enforceable.

The Fifth Circuit "applies a strong presumption in favor of the enforcement of mandatory [forum-selection clauses]."  *Weber*, 811 F.3d at 773 (citing *Haynsworth*, 121 F.3d at 962-63).  The strong presumption in favor of enforceability may be overcome by:

> a clear showing that the clause is 'unreasonable' under the circumstances.  Unreasonableness potentially exists where (1) the incorporation of the FSC into the agreement was the product of fraud

> or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the FSC would contravene a strong public policy of the forum state

*Weber*, 811 F.3d at 773 (citing *Haynsworth*, 121 F.3d at 963 (quoting *M/S Bremen*, 407 U.S. at 7).

Uniloc cannot make a clear showing that the mandatory forum selection clause here is unreasonable under the circumstances.  First, the forum selection clause was not a product of fraud.  Second, Uniloc will not be deprived of its day in court—its suit will continue, albeit in a different forum.  Third, Uniloc will not be deprived of any remedies—the remedies Uniloc seeks here will be equally available to Uniloc in the transferee forum.  Finally, enforcement of the forum selection clause would not contravene a strong public policy of the forum state.  In fact, public policy supports enforcing the forum selection clause.  As successor-in-interest to the Patents-in-Suit, Uniloc is bound by the PCLA's forum selection clause to which the original owner expressly agreed.  *See, e.g., Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. CIV. 3:09CV212 (AWT), 2010 WL 174078, at *9-11 (D. Conn. Jan. 14, 2010) (citing *Aguas Lenders Lenders Recovery Grp. LLC v. Suez, S.A*., 585 F.3d 696, 701 (2d Cir. 2009)) (binding non-signatory defendant to forum selection clause because defendant was successor-in-interest to a patent encumbered by a license agreement that included a forum selection clause).

## C.     This Case Could Have Been Brought In The Southern District of New York.

In deciding a motion to transfer under § 1404, the threshold question is whether the suit could have been brought in the proposed transferee district.  28 U.S.C. § 1404(a).  Uniloc could have brought this suit in the Southern District of New York.  Cisco is registered to do business in New York and has designated an agent for service of process in New York.  *See* Ex. 12.  Cisco also has a regular and established place of business in the Southern District of New York. Ex. 13.

Finally, Cisco sells its products throughout the United States, including in the Southern District of New York.

### D.      The § 1404(a) Public Interest Factors Favor Transfer.

Because the forum-selection clause of the PCLA applies to this case (*see* Section B.2, *supra*), the Court's § 1404(a) analysis is limited to considering whether the public interest factors demonstrate "extraordinary circumstances" that justify departing from the exclusive, mandatory, choice of forum contained in the PCLA.  *Atl. Marine*, 571 U.S. at 52, 62-64; *Uniloc USA*, 2017 WL 959856, at *2-4.    Although Plaintiff bears the burden to show such extraordinary circumstances, it cannot do so here.  *Atl. Marine*, 571 U.S. at 63-64.

Instead, the § 1404(a) public interest factors—(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law—on balance, favor transferring this case to the Southern District of New York.[10]

### 1.      The Administrative Difficulties Flowing From Court Congestion Are Neutral With Respect To Transfer.

There are 41 judges and 15 magistrate judges in the Southern District of New York compared to the 8 judges and 8 magistrate judges in the Eastern District of Texas.  According to the most recent statistics from the Administrative Office of the U.S. Courts, the Southern District

---

[10] Even if the "public interest" factors are neutral or disfavor transferring this case, that would not by itself demonstrate extraordinary circumstances to deny transfer to the choice of forum specified in the PCLA.  *See XY, LLC*, 2017 WL 5505340, at *8-9 (finding the public factors did not disfavor transfer where two factors weighed against transfer and two were neutral); *Zix*, 2016 WL 7042221 at *4 (finding same, where one factor weighed against transfer and three were neutral); *Uniloc USA*, 2017 WL 959856, at *5 (finding same, when two factors were neutral, one weighed against, and one in favor of, transfer).

of New York has approximately 160 pending cases per judge, compared to 162 cases per judge in

the Eastern District of Texas.[11]  Therefore the first factor is neutral, and as the Federal Circuit has

noted, "this factor is mostly speculative, and thus has a relatively limited impact on [the] ultimate

decision to transfer."  *See Uniloc USA*, 2017 WL 959856, at \*4 (citing *In re Genentech, Inc*., 566

F.3d 1338, 1347 (Fed. Cir. 2009)).

### 2.   The Southern District Of New York's Local Interest In This Case Favors Transfer.

The second factor favors transfer.  The State of New York has a local interest in deciding

license disputes that specify New York as the exclusive forum.  This is particularly true when both

parties involved in the dispute have business locations within the state.  Cisco is registered to do

business in New York[12] and has an established place of business in the Southern District Court of

New York.  Ex. 13.  Public records indicate that Uniloc's main address is in the Southern District

of New York.  Ex. 14.  Despite having alleged in its complaint that Uniloc has a place of business

in Texas (D.I. 1, ¶ 3), the public records available identify no such entity as being registered to do

business in Texas.[13]  The Eastern District of Texas does not have ***any*** local interest in resolving

issues related to Uniloc.[14]

Philips, Uniloc's predecessor-in-interest of the Patents-in-Suit, also has strong connections

to New York.  For example, the ███████████████████████████████

---

[11] *See* Administrative Office of the U.S. Courts at, https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2018/03/31 (last visited March 24, 2019).

[12] *See* Ex. 12.

[13] Searching "Uniloc" in the Taxable Entity Search from the Texas Comptroller of Public Accounts only turns up "Uniloc USA, Inc."—an entity that is not the plaintiff in this case. *See* Ex. 15.

[14] Nor could it, Uniloc and its parent CF Uniloc Holdings LLC (D.I. 2.) are patent holding companies that were incorporated and formed in Delaware less than two months before the patents were assigned to it.  *See* Exs. 16 and 17.  Uniloc is nothing more than a shell company with its only connection to Texas being that it decided to bring suit in this forum—a decision that the Court must disregard under *Atlantic Marine*.  571 U.S. at 63.

██████████████████████████████████████

██████████████████████████████████████

████████████████  Ex. 18.[15]   Notably, that ████████████████████████

██████████████████████████████ with respect to Bluetooth. *Id.* Accordingly, this

factor favors transfer.

>    **3.      The Southern District Of New York's Familiarity With New York State Law Favors Transfer.**

The third factor favors transfer.  The PCLA has a choice of law provision that requires it

to "be construed and controlled by the laws of the State of New York without reference to conflict

of laws principles" (Ex. 1, § 8(d)).  Although Federal courts regularly apply state law, it is likely

that a Federal court in New York has more experience applying New York contract law than this

Court.  *See Uniloc USA*, 2017 WL 959856, at *4 (finding this factor favored transfer where

defendant asserted defenses under an agreement governed by the law of the transferee forum).

>    **4.      Avoidance Of Unnecessary Conflicts of Law Issues Or The Application Of Foreign Law Is Neutral.**

The fourth factor is neutral because the same law will apply in both forums and foreign

law is irrelevant here.

## CONCLUSION

For at least the reasons above, Cisco respectfully requests that the Court grant Cisco's

motion, and transfer this case to the Southern District of New York.

---

[15] Philips also has an Intellectual Property & Standards office located in the Southern District of New York.  Philips Decl., ¶ 5.

Dated: April 24, 2019   By: */s/ Elizabeth Weyl with permission by Michael E. Jones*

        Tamir Packin (*admitted pro hac vice*)
        New York Bar No. 4546685
        tpackin@desmaraisllp.com
        Lindsey Miller (*admitted pro hac vice*)
        lmiller@desmaraisllp.com
        Michael A. Wueste (*admitted pro hac vice*)
        mwueste@desmaraisllp.com
        Michael Rhodes (*admitted pro hac vice*)
        mrhodes@desmaraisllp.com
        Elizabeth Weyl (*admitted pro hac vice*)
        eweyl@desmaraisllp.com
        Thomas Derbish (*admitted pro hac vice*)
        tderbish@desmaraisllp.com

        DESMARAIS LLP
        230 Park Avenue
        New York, NY 10169
        (212) 351-3400 (Telephone)
        (212) 351-3401 (Facsimile)

        *Lead Counsel for Defendant*
        *Cisco Systems, Inc.*

        Michael E. Jones (State Bar No. 10929400)
        mikejones@potterminton.com
        POTTER MINTON, P.C.
        110 North College, Suite 500
        Tyler, Texas 75702
        (903) 597-8311 (Telephone)
        (903) 593-0846 (Facsimile)

        *Local Counsel for Defendant*
        *Cisco Systems, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to L.R. CV-7(h), I, Elizabeth Weyl, counsel for Defendant Cisco Systems, Inc., met and conferred by telephone with Elizabeth Day, counsel for Uniloc 2017 LLC, on April 24, 2019, regarding this motion.  Counsel for Plaintiff indicated that the motion is opposed.

*/s/ Elizabeth Weyl*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on April 24, 2019.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on April 24, 2019.

*/s/ Michael E. Jones*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*