# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC 2017 LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00505-JRG |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cisco Systems, Inc.'s ("Cisco") Motion to Transfer Venue to the Southern District of New York Pursuant to a Forum Selection Clause in a Prior License Agreement (the "Motion"). (Dkt. No. 37.) The Court held a hearing on August 28, 2019. Having considered the Motion, briefing, and arguments of the parties, the Court is of the opinion that the Motion should be **DENIED**.

### I.  BACKGROUND

Plaintiff Uniloc 2017 LLC ("Uniloc") filed a complaint against Cisco on November 17, 2018 asserting that certain Cisco products infringe (the "Accused Products") U.S. Patent Nos. 6,285,892 (the "'892 Patent") and 6,664,891 (the "'891 Patent") (collectively, the "Patents-in-Suit"). (Dkt. No. 1.) Uniloc is the fourth successor-in-interest of the Patents-in-Suit. Koninklijke Philips Electronics and Philips Electronics North America Corporation (collectively, "Philips") were the original owners of the '892 Patent and '891 Patent respectively. (Dkt. No. 1 at ¶¶ 15, 36.) Philips conveyed the Patents-in-Suit to IPG Electronics 503 ("IPG") in June 2008. (Dkt. No. 40 at 2). IPG subsequently assigned the Patents-in-Suit to Pendragon Wireless LLC ("Pendragon") in

March 2012. (*Id.*) Pendragon assigned the Patents-in-Suit to Uniloc Luxembourg S.A. in November 2017, which then conveyed the Patents-in-Suit to Uniloc in March 2018. (*Id.*)

Cisco asserts that the Uniloc's infringement claims are based on the Accused Products' compliance with Bluetooth Special Interest Group ("SIG") specifications. SIG is the standards setting organization that oversees the development of Bluetooth technology standards and the licensing of Bluetooth technologies and trademarks to its member companies. Cisco contends that to join SIG, prospective members must agree to the terms of the Bluetooth Patent/Copyright License Agreement ("PCLA") which contains a forum selection clause. Cisco asserts that it has a license under the PCLA, and as a result now moves the Court to transfer the above-captioned case to the Southern District of New York pursuant to the PCLA forum-selection clause. (Dkt. No. 37.)

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) [hereinafter *GPG*]. In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g.*, *Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-

01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *GPG*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. *Id.* Beyond this, however, the Federal Circuit has provided little guidance. Previously, this Court has used a *less than one-half and nearer to the one-quarter standard* when addressing the non-frivolousness threshold regarding forum selection clauses under § 1404(a). *See Zix*, 2016 WL 7042221 at *3. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense becomes "non-frivolous." *Id.* This Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum," and that it is probably "found nearer the one-quarter marker." *Id.*

If the court finds that the parties' dispute triggers a valid forum selection clause, then the "district court should ordinarily transfer the case to the forum specified in that clause [unless there are] . . . extraordinary circumstances unrelated to the convenience of the parties" that disfavor transfer. *Atl. Marine*, 571 U.S. at 62. "[T]his requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. "First, the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, [the] court . . . should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id.* at 64. These public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of

3

laws or in the application of foreign law. *In re Volkswagen,* 371 F.3d 201, 203 (5th Cir. 2003). This list is "not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008). The court should also assess these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Finally, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

## III. DISCUSSION

The Court must first determine whether Cisco has raised a "non-frivolous" defense that entitles it to the benefit of the forum selection clause contained in the PCLA. This is to say the Court must determine where Cisco's license defense falls on the continuum between wholly frivolous and success on the merits. Cisco's claimed defense arises out of the following provision in the PCLA:

> Effective upon the adoption by Bluetooth SIG of each Bluetooth Specification, each Associate and Adopter Member and their Affiliates hereby grant to each Promoter Member and Associate and Adopter Member and all of their respective Affiliates (also collectively, "Licensee") a nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicenseable, worldwide license under its Necessary Claims solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions; provided that such license need not extend to any part or function of a product in which a Compliant Portion is incorporated that is not itself part of the Compliant Portion.

(Dkt. No. 37-2 at §5(b).)

Cisco argues that Philips — the original owner of the Patents-in-Suit — and Cisco are Adopter Members of SIG and were Adopter Members prior to the transfer of the Patents-in-Suit in June 2008. (*See* Dkt. No. 37 at 9.) As a result of this shared membership, Cisco claims that it is entitled to a license and that the instant suit is governed by the PCLA.

4

Uniloc argues that Cisco has failed to produce reliable evidence that both Philips and Cisco were Adopter Members of SIG prior to Philips' transfer of the Patents-in-Suit. (Dkt. No. 40 at 3–4.) Uniloc further argues that Cisco's license defense is frivolous because Cisco has not logically connected the dots to show that the PCLA applies to the Patents-in-Suit. To establish the viability of its license defense, Cisco has produced, in relevant part, (1) a 2016 PCLA, (2) declarations from Philips (the "Philips Declaration") and SIG, (3) a screenshot of a database showing SIG membership (the "Screenshot"), and (4) the assignment of the Patents-in-Suit from Philips to IPG in 2008.

First, the PCLA offered by Cisco was not signed by Philips, nor could Cisco show a copy of the agreement that had been signed by Philips because the PCLA is said to be a "click-through agreement." (Dkt. No. 55 at 6:9–23.) Without a signature, Cisco turned to the Philips Declaration which states that Philips was a member of SIG since before 2003. (*Id.* at 7:19–24.) However, the Philips Declaration was not based solely on the personal knowledge of the affiant, but instead on "confirmation with other responsible personnel." (Dkt. No. 37-21 at ¶4.) With this language, the Court has no means to assess the reliability of the Philips Declaration. Some unspecified portion of it is clearly hearsay from unnamed third parties. As noted at the hearing, the Court has no way to know if 99 percent or one percent of the declaration is based on such hearsay from unknown sources. Nor does Cisco disagree with the Court's characterization of the Philips Declaration as such. It simply has nothing else to offer. (Dkt. No. 55 at 8:16–9:23.)

Next, Cisco attempts to use the Screenshot showing that Philips and Cisco were members of SIG prior to the June 2008 assignment of the patents. (Dkt. No. 37-4.) However, the Screenshot is plagued with its own reliability issues. The Screenshot states that Philips joined SIG in January 1971, well before SIG was formed in 1998. Cisco acknowledges that this date is a clear error. (Dkt.

5

No. 55 at 14:8–20.) The Screenshot also states that Cisco became a member in 2006 but fails to state whether Cisco's membership extended beyond 2006. (Dkt. No. 37-4.) Furthermore, despite the fact that Cisco went to the trouble of getting a declaration of SIG concerning the veracity of the PCLA, Cisco failed to get any declaration from SIG concerning the veracity of the Screenshot. (*See* Dkt. No. 42-5.) Cisco's invitation via its argument that the Court should accept the parts of the Screenshot that helps it but ignore the clear errors elsewhere within the Screenshot is not appealing. Notably, Cisco failed to obtain a declaration from anyone within Cisco affirming that Cisco joined SIG in 2006 and continues to be a member today.

Finally, Cisco points to the document assigning the Patents-in-Suit from Philips to IPG as evidence that the Patents-in-Suit were subject to the PCLA. (Dkt. No. 37-9.) The assignment from Philips to IPG contains a section entitled "Existing Licenses and Commitments, which directs the reader to SIG's website. (Dkt. No. 42 at 4.) Cisco contends that Philips' inclusion of the SIG website in its disclosure of existing licenses and commitments regarding the Patents-in-Suit constitutes a representation by Philips that the Patents-in-Suit were encumbered by the PCLA. (Dkt. No. 55 at 15:14–17:10.) However, the language of the clause never says that the patents-in-suit are subject to all or even some of the terms of the SIG website. The inclusion of the SIG website simply could have been an acknowledgment of the existence of a standard setting body. The URL included by Philips directs the reader to the general homepage of SIG. It does not direct the reader to the PCLA or any other agreement entered into by Philips. Arguably, Philips could have included the SIG website as a measure of protection from future claims by IPG. As such, the disclosure of the SIG site provides little probative evidence that the Patents-in-Suit are subject to the PCLA.

## IV. CONCLUSION

The evidence put forth by Cisco does not constitute much more than a bare allegation that a license provides a defense to the claims in the suit. *See GPG*, 651 F.3d at 1359. Cisco did not produce any reliable documentation showing that Philips agreed to the PCLA at the relevant time or that Philips was a member of SIG at the relevant time. Instead, Cisco produced unsigned documents, declarations containing rank hearsay from unidentified strangers, and a screenshot from a database with clear errors.

At the end of the day, Cisco has not placed any evidence on the continuum establishing a non-frivolous claim that it is entitled to assert the licensing defense. In short, Cisco not only failed to shoot and hit the bullseye — it missed the target altogether.

Since Cisco has not made even a minimally reliable showing that the forum-selection clause applies in this case, the Court need not address whether this is an extraordinary case in which transfer would be inappropriate. Accordingly, Cisco's Motion to Transfer Venue to the Southern District of New York Pursuant to a Forum Selection Clause in a Prior License Agreement is **DENIED**.

**So Ordered this**
**Sep 16, 2019**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE